**No. 26-85**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

Juan ARENAS MARTINEZ,

*Petitioner*

v.

Todd BLANCHE, Acting Attorney General,

*Respondent*.

---

On Petition for Review of an Order of Reinstatement
(AGENCY NO. A200-052-300)

---

# PETITIONER'S REPLY BRIEF

---

Cole Enabnit
Sadie Wolff

Portland Immigration Law, LLC
520 SW 6th Avenue, Suite 610
Portland, OR 97204
(503) 749-7700
cole@pdximmigration.com
sadie@pdximmigration.com

*Attorneys for Petitioner*
Juan ARENAS MARTINEZ

## TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 3

I. Riley does not strip this Court of Jurisdiction over Reinstatement Decisions .......... 3

II. Standard of Review .......... 8

III. The reinstatement inquiry was incomplete and the record does not confirm that Arenas was previously removed .......... 10

IV. The Reinstatement inquiry and record do not support the requisite finding that Petitioner unlawfully re-entered .......... 13

A. The reinstatement inquiry and record rely on the presumption of regularity despite affirmative evidence of irregularity .......... 13

B. Respondents rely upon unknowns for the reinstatement and this case .......... 14

IV. The Reinstatement inquiry and record do not support the requisite finding that Petitioner unlawfully re-entered .......... 14

CONCLUSION AND RELIEF REQUESTED .......... 18

CERTIFICATE OF COMPLIANCE .......... 19

CERTIFICATE OF SERVICE .......... 20

# TABLE OF AUTHORITIES

## Cases

*A.B.D. v. Wamsley*,
No. 6:25-cv-02014 (D. Or. Jan. 22, 2026)................................................. 2–3

*Am. Fed'n of Gov't Emp., AFL-CIO v. U.S. Off. of Pers. Mgmt*,
No. 3:25-cv-01780 (N.D. Cal. Sept. 15, 2025) ....................................... 1, 12

*Batista v. Ashcroft*,
270 F.3d 8 (1st Cir. 2001)......................................................................... 8

*Beekhan v. Holder*,
634 F. 3d 723 (2d Cir. 2011)....................................................................... 8

*Calcano-Martinez v. I.N.S.*,
533 U.S. 348, 351 (2001)....................................................................... 7–8

*Castro-Cortez v. INS*,
239 F. 3d 1037 (9th Cir. 2001).................................................... 4, 6, 7, 8, 10

*Church of Scientology of California v. United States*,
920 F.2d 1481 (9th Cir. 1990).................................................................... 14

*E.A. T.-B. v. Bostock (Wamsley)*,
No. 2:25-cv-01192 (W.D. Wash.) (order granting habeas corpus)...... 2, 11–12

*Fernandez-Vargas v. Gonzales*,
548 U.S. 30 (2006)................................................................................... 4, 8

*Garcia De Rincon v. Dep't of Homeland Sec'y*,
539 F.3d. 1133 (9th Cir. 2008).................................................................... 9

*Guerrero-Lasprilla v. Barr*,
140. S. Ct. 1062 (2020)........................................................................... 7

*I.N.S. v. St. Cyr*,
533 U.S. 289 (2001)........................................................................ 7

*Kucana v. Holder*,
558 U.S. 233 (2010)........................................................................ 7

*Lanuza v. Love*,
899 F.3d 1019 (9th Cir. 2018)............................................................ 12, 17

*Lin v. Gonzales*,
473 F.3d 979 (9th Cir. 2007)............................................................ 6

*M-E-G-G- v. Hermosillo*,
No. 6:25-cv-02011 (D. Or. Feb. 27, 2026)............................................ 3

*Morales-Izquierdo v. Gonzales*,
486 F.3d 484 (9th Cir. 2007)............................................................ 4

*Ochoa-Carrillo v. Gonzales*,
437 F.3d 842 (8th Cir. 2006)............................................................ 8

*Ortiz-Alfaro v. Holder*,
694 F.3d 955 (9th Cir. 2012)............................................................ 5

*Perez Cruz v. Bondi*,
146 F.4th 730 (9th Cir. 2025)............................................................ 13

*Riley v. Bondi*,
145 S. Ct. 2190 (2025)........................................................................ 3, 4, 5

*Ruiz v. Bondi*,
No. 18-71787 (9th Cir. Apr 1, 2026)................................................... 3

*Simeonov v. Ashcroft*,
371 F.3d 532 (9th Cir. 2004)............................................................ 9

*Tovar-Reyes v. Blanche*,
No. 25-4423 (2026)........................................................................ 3

*United States ex rel. Accardi v. Shaughnessy*,
347 U.S. 260 (1954)........................................................................ 14

*Vega-Anguiano v. Barr*,
982 F.3d 542 (9th Cir. 2019)........................................................................ 8

*Vera Chairez v. Mayorkas*,
168 F.4th 1227 (9th Cir. 2026)...................................................................... 6

*Villa-Anguiano v. Holder*,
727 F.3d 873 (9th Cir. 2013)............................................................ 8, 10, 18

*Wilkinson v. Garland*,
144 S. Ct. 780 (2024)................................................................................ 10

**Statutes**

8 U.S.C. § 1101(a)(47)(A).............................................................................. 5

8 USC § 1182(a)(9)(A)(ii)............................................................................. 1

8 U.S.C. § 1252(a)(1)........................................................................... 3, 4

8 U.S.C. § 1252(b)(1)..................................................................................... 4

8 U.S.C. § 1252 (b)(4)(B)............................................................................... 9

INA § 242...................................................................................................... 4, 8

INA § 242(a)(1) .............................................................................................. 4

**Regulations**

8 C.F.R. § 208.31........................................................................................ 15

8 C.F.R. § 208.31(c).................................................................................... 14

8 C.F.R. § 241.8…........................................................................................ 18

8 C.F.R. § 241.8(b)................................................................................ 14, 15

Signatures on Immigration Benefit Requests,
91 Fed. Reg. 25,479 (May 11, 2026) (to be codified at 8 C.F.R. pt. 103)..... 11

**Rules**

FRAP 17 (b)(1)(A)........................................................................................ 12

FRE 1003.......................................................................................................... 9

## INTRODUCTION

This case is before the Court because Respondents issued a reinstatement order without establishing the three required factual predicates and because the reinstatement process afforded Petitioner violated his due process rights. Inconsistencies and competing material documents in the administrative record underscore the necessity of judicial review. If the reinstatement order stands and is executed, his removal will trigger a twenty-year bar from re-entry under 8 USC § 1182(a)(9)(A)(ii) for a second removal, instead of the five-year bar from re-entry flowing from the original expedited removal order. This fifteen-year difference is significant, particularly if the reinstatement decision was not grounded in facts. Petitioner has a pending U visa application, U.S. citizen child, and has spent over two decades building a life in the U.S. The record contains conflicting documents that call into question whether Petitioner was actually removed from the U.S. after the original removal order was issued or that he unlawfully re-entered, and both are required for reinstatement.

Respondents rely on the presumption of regularity, despite the overwhelming number of courts' determinations that the presumption no longer holds. Resp'ts' Reply 21; Ryan Goodman, Siven Watt, Audrey Balliette, Margaret Lin, Michael Pusic, and Jeremy Venook, *The "Presumption of Regularity" in Trump*

*Administration Litigation (4th edition)*, Just Security, (March 19, 2026), https://www.justsecurity.org/120547/presumption-regularity-trump-administration-litigation/. In hundreds of cases judges have addressed defects in government information and representations, false sworn statements and contradictions within the record, arbitrary and capricious administrative agency action, and agencies' increasing noncompliance with judicial orders. Goodman, https://www.justsecurity.org, at ch. 2. Here, the presumption of regularity is rebutted by the record itself: DHS produced two materially different I-296s in two federal proceedings, certified each record as complete, and never explained why one version was omitted from this Court's ROP.

Issues with the administrative record and with Respondents' non-adherence to the regulations have arisen in many other cases in this circuit. For example, in one case, there were "multiple inconsistent justifications" from ICE agents and "competing I-213 reports in the record" and the federal judge found "that the challenges facing under-resourced and disjointed agencies underscore rather than undermine the need for robust procedural safeguards before a deprivation of liberty occurs[.]" Order Granting Petition for Writ of Habeas Corpus at 7, *E.A. T.-B. v. Bostock (Wamsley*), No. 2:25-cv-01192, at *2 (W.D. Wash. Aug. 19, 2025); *see also warrantless ICE arrest cases such as A.B.D. v. Wamsley*, No. 6:25-cv-02014 (D. Or. Jan. 22, 2026) ("The parties do not dispute that ICE officers did not" follow

the regulation-mandated process for a warrantless arrest); *M-E-G-G- v. Hermosillo*, No. 6:25-cv-02011, at *1–4 (D. Or. Feb. 27, 2026) (granting preliminary injunction preventing warrantless arrests concluding plaintiffs were "likely to succeed in proving ICE's unlawful practice has harmed many Oregon residents")." This case arises within a greater context of courts' recognition of the necessity of judicial oversight of Respondents' actions.

## ARGUMENT

### I. Riley does not strip this Court of Jurisdiction over Reinstatement Decisions.

This Court's published decisions continue to exercise jurisdiction under 8 U.S.C. § 1252(a)(1) over reinstatement order petitions for review after *Riley*. *See Verduzco Ruiz v. Bondi*, No. 18-71787, *4 (9th Cir. Apr 1, 2026); *Riley v. Bondi*, 145 S. Ct. 2190 (2025).[1]

There was no need to revisit this Court's precedent about jurisdiction under 8 U.S.C. § 1252(a)(1) after *Riley* because *Riley* did not examine the statutory provision granting appellate courts jurisdiction to review reinstatement orders, 8

[1] Still, Respondents are suggesting this Court should reconsider its precedent on this issue in multiple cases before the Court. Petitioner has been made aware that a panel of this Court is considering the impact of *Riley* on jurisdiction over petitions for review of reinstatement orders in *Tovar-Reyes v. Blanche*, No. 25-4423 (2026) (argued on May 20, 2026).

USC § 1252(a)(1). *Riley*, 145 S. Ct. 2190. *Riley* held "that a [Board of Immigration Appeals] BIA order in a withholding-only proceeding is not 'final order of removal'" under § 1252(b)(1) and that the 30-day filing deadline under § 1252(b)(1) is a claims-processing rule. *Id.* at 2195. Neither of these issues have bearing on reinstatement orders and neither of these issues are present in this case.

Respondents pronounce an overbroad interpretation of *Riley* that stretches far beyond the issues before the Supreme Court in *Riley*, and use out-of-context quotes, missing that the cases cited reaffirm jurisdiction over reinstatement orders. Resp'ts' Reply 12. First, Respondents cite *Morales-Izquierdo* for the proposition that removal and reinstatement are not equivalent, but the Court in that case "leave[s] open the possibility that individual petitioners may raise procedural defects in their particular cases." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 496 (9th Cir. 2007). Second, Respondents cite *Castro-Cortez* for the proposition that "removal orders are not literally orders of removal" without conceding the next sentence explains "on the basis of this court's precedent applying the precursor to 242, we conclude that 242(a)(1) … authorizes review of reinstatement orders." *Castro-Cortez v. INS*, 239 F.3d 1037, 1044 (9th Cir. 2001) (abrogated on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006) ("the INA simply does not provide support for the contention in our withdrawn opinion that reinstatement orders are not subject to final review pursuant to 242."). This Court

has repeatedly held that though reinstatement orders and removal orders are distinct, each type of order is reviewable. *Riley* did not change that.

Even the reasoning underlying *Riley* confirms that this Court has jurisdiction over reinstatement orders. *Riley* was grounded in an understanding that a Final Administrative Removal Order (FARO) is an "order of deportation," defined as either an order "concluding that the alien is deportable" *or* an order "ordering deportation." *Riley*, 145 S. Ct. 2198–99; 8 U.S.C. § 1101(a)(47)(A).[2] A reinstated removal order meets either definition. The process of reinstatement itself requires the officer to determine whether the alien is deportable: 1. Were they subject to a prior order of removal?; 2. Were they previously removed?; 3. Did we confirm that they unlawfully re-entered? *See* CRS Rep. No. IF11736, at 1 (2024), https://www.congress.gov/crs_external_products/IF/PDF/IF11736/IF11736.5.pdf. Once the officer makes these three determinations, "the officer must then give the alien written notice of his determination that the alien is subject to removal and provide him with an opportunity to make a statement contesting the determination…. If these requirements are met," Form I-871 formalizes the "Decision, Order, and Officer's Certification", and DHS may carry out the removal. *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 956 (9th Cir. 2012) (citing *Lin v.*

---

[2] Respondents combine the two in a conjunctive gloss, adding a requirement the text lacks and limiting the number of orders which could be considered final. *Compare* Resp'ts' Reply 13 *with* 8 U.S.C. § 1101(a)(47)(A).

*Gonzales*, 473 F.3d 979, 983 (9th Cir. 2007); and ROP-1. In effect, a reinstatement decision orders deportation.

Courts retain jurisdiction over constitutional claims, including due process claims. *See, e.g.*, *Vera Chairez v. Mayorkas*, 168 F.4th 1227, 1238 (9th Cir. 2026) ("we retain jurisdiction over colorable constitutional claims that challenge the procedures used by the agency."). When the reinstatement process was newly instituted by IIRAIRA, this Court drew attention to the "very serious due process concerns" caused by the amended regulations governing reinstatement and affirmed that "there is no dispute that aliens subject to orders of reinstatement enjoy Fifth Amendment protection." *Castro-Cortez*, 239 F.3d at 1048–49.

As Respondents point out, removal proceedings are distinct from reinstatement processes. This underscores the importance of the availability of judicial review of reinstatement decisions. Removal proceedings include an opportunity to obtain representation and to have a day in court before an immigration judge. After the decision, there is an opportunity to seek an appeal before the Board of Immigration Appeals. Reinstatement processes are truncated decisions made by an officer charged with reviewing the record, making a decision, and taking a statement they then must consider. There is a separate credible fear interview process, but a petition for review before a circuit court is the only option for review of the reinstatement decision itself. This limited process

is heightened when the initial order itself was an expedited order of removal, which is an abbreviated process itself.

The ramifications of Respondents' proposed jurisdiction stripping departure from precedent would be remarkable. There is a reason the proposition is unprecedented in this circuit. As *Castro-Cortez* pointed out, the regulations which put the reinstatement process into place already significantly eroded due process protections in the reinstatement process. *Castro-Cortez*, 239 F.3d at 1048.

Respondents urge this Court to shield agency action in the reinstatement process from review entirely, but are misguided in their underlying presumption that agency action is unreviewable. Resp'ts' Reply 10. Agency action is, by default, reviewable. *Kucana v. Holder*, 558 U.S. 233, 251 (2010) (there is a "presumption favoring judicial review of administrative action"). Absent "'clear and convincing evidence' of congressional intent to preclude review", the correct principle of statutory construction is a presumption favoring judicial review of agency action. *Guerrero-Lasprilla v. Barr*, 140. S. Ct. 1062, 1069 (2020); *I.N.S. v. St. Cyr*, 533 U.S. 289, 314 (2001) ("the absence of [another judicial] forum, coupled with the lack of a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration" … "strongly counsels against a construction that would raise serious constitutional questions."; *see also Calcano-Martinez v. I.N.S.*, 533 U.S. 348, 351 (2001) ("[L]eaving [noncitizens]

without a forum for adjudicating claims such as those raised in this case would raise serious constitutional questions.") .

**II. Standard of Review**

Over twenty years ago, this Court explained that "[INA Section] 242 authorizes judicial review of final orders of removal and nothing in that section suggests that the scope of review should be limited in cases [reviewing reinstatement orders.]" *Castro–Cortez v. INS*, 239 F.3d 1037, 1043–44 (9th Cir. 2001). As described at length in *Castro-Cortez*, this forum is the only venue for review to ensure due process in the reinstatement proceedings. *Id*. at 1048–50.

This Court and other circuit courts have determined that federal courts can review each of the factual predicates of reinstatement orders and other legal issues related to the validity of the reinstatement order. *See*, *e.g.*, *Villa-Anguiano v. Holder*, 727 F.3d 873, 878 (9th Cir. 2013) (affirming jurisdiction over petitions for review of reinstatement) ; *Vega-Anguiano v. Barr*, 982 F.3d 542, 545 (9th Cir. 2020) (legality of prior order); *Fernandez-Vargas*, 548 U.S. at 36–37 (retroactivity); *Beekhan v. Holder*, 634 F. 3d 723 (2d Cir. 2011) (reentry); *Ochoa-Carrillo v. Gonzales*, 437 F.3d 842 (8th Cir. 2006) (identity); *Batista v. Ashcroft*, 270 F.3d 8 (1st Cir. 2001) (citizenship).

The statute authorizing judicial review of orders of removal specifies that "administrative findings of fact are conclusive unless any reasonable adjudicator

would be compelled to conclude to the contrary." 8 U.S.C. § 1252 (b)(4)(B). The only contemporaneous document in the administrative record supporting the finding that Petitioner was actually removed from the U.S. materially differs from the document submitted in another federal court to establish the same fact. Every signature meant to verify the validity of the document differs between the two forms. Federal Rule of Evidence 1003 exists because duplicates can raise questions about document authenticity. The competing versions of the form in the administrative record, the concealing of one version of the form in two different federal cases, and the lack of explanation about the discrepancies and decision to conceal reasonably warrant judicial review of the administrative fact-finding.

"The court also reviews due process claims and questions of law raised in immigration proceedings de novo." *Garcia De Rincon v. Department of Homeland Sec.*, 539 F.3d 1133 (9th Cir. 2008) (citing *Simeonov v. Ashcroft,* 371 F.3d 532, 535 (9th Cir. 2004)). The issues in this case are legal and procedural: Petitioner asks the Court to determine whether there was due process of law and whether the Accardi Doctrine was violated. De novo review is appropriate because the questions at hand are due process claims and questions of law.

Respondents cite *Wilkinson* as support for the contention that a more limited scope of review is appropriate here, but *Wilkinson* was a petition for review of a Cancellation of Removal decision which is an entirely different type of decision in

the immigration context. *Wilkinson v. Garland*, 144 S. Ct. 780 (2024). Cancellation of removal decisions are made by an Immigration Judge based on eligibility under statutory criteria and a discretionary determination. *See Wilkinson*, 144 S. Ct. at 785 (2024). That decision can be appealed to the Board of Immigration Appeals. *See id. Wilkinson* held that after the BIA decision, Courts of Appeals have jurisdiction to review questions of law arising from the cancellation decision made by the Immigration Judge and the BIA. *Id.* A more limited review is appropriate because review of law and fact was already available. By contrast, reinstatement decisions are not made by an immigration judge, and are not appealable to the BIA. In reinstatement decisions, circuit courts are the only line of defense to assess ICE's determination of the factual predicates for reinstatement and ensure procedural safeguards were honored. *See Villa-Anguiano v. Holder*, 727 F.3d 873, 879 (9th Cir. 2013); *see also Castro-Cortez* (concern about limited record).

**III. *The reinstatement inquiry was incomplete and the record does not confirm that Arenas was previously removed***

Respondents gloss over the second and third steps of the reinstatement inquiry, dismissing rather than addressing the concerns about the validity of key documents meant to establish the material facts of whether Petitioner was removed and unlawfully reentered. It is concerning that the certified record in this case differed from a certified record in Petitioner's habeas case in another federal court.

In an age when AI can merge and create documents almost instantly, and when the Department of Homeland Security has promulgated a rule specifically addressing "requests submitted with invalid signatures created by copy-pasting or affixing an image of the same signature on multiple benefit requests", Petitioner's concern warrants a meaningful response. *See* Signatures on Immigration Benefit Requests, 91 Fed. Reg. 25,479 (May 11, 2026) (to be codified at 8 C.F.R. pt. 103) (explaining that benefit requests may be rejected by USCIS at any time if USCIS identifies reason to question the validity of a signature).

Respondents paint the inconsistencies as "minor, immaterial, irrelevant" and do not account for the differences despite DHS's own concern about copied and pasted signatures. *Id.* at 25,482 ("The USCIS Administrative Appeals Office (AAO) has adjudicated 758 appeals of requests that were denied because the signature was copied from another document.").

Given the increasing pressure facing ICE agents, DOJ attorneys, OIL attorneys, and others in DHS, it is reasonable to be concerned that the record in this case differs from the record in another case pertaining to Arenas, and to be concerned about the validity of the forms based on issues with the signatures. *See, i.e.*, *E.A. T.-B. v. Bostock (Wamsley*), 2:25-cv-01192, at 7 (W.D. Wash. 2025) (order granting habeas corpus) (noting inconsistencies and "competing I-213 reports in the record," finding "that the challenges facing under-resourced and disjointed

agencies underscore rather than undermine the need for robust procedural safeguards before a deprivation of liberty occurs". ); and *Lanuza v. Love*, 899 F.3d 1019 (9th Cir. 2018) (involving a forged signature on an I-826 form); *see also* Order on Cross-Motions for Summary Judgement at 12, *Am. Fed'n of Gov't Emp., AFL-CIO*, 3:25-cv-01780 (order granting summary judgment) (determining "[t]he 'administrative record' submitted by the government is a sham. It does not facilitate review: It frustrates it."). The competing Forms I-296 are the main evidence in the record that Petitioner was removed, and unlawfully re-entered; if the Form(s) I-296 is (are) not trustworthy, the basis for the reinstatement order falls apart.

Further, Respondents' only justification for omitting the second Form I-296 from the Record of Proceedings is that the two are "virtually identical but for the placement of Petitioner's signature." Resp'ts' Opp'n Pet'r's Mot. Strike 1. There has been no explanation for the omission of one I-296 from the certified Record of Proceedings despite having two Forms I-296 in Respondents' possession. *Id.* This is despite the rule that the agency must file "the entire record". FRAP 17 (b)(1)(A).

## IV. The Reinstatement inquiry and record do not support the requisite finding that Petitioner unlawfully re-entered.

### *A. The reinstatement inquiry and record rely on the presumption of regularity despite affirmative evidence of irregularity.*

The government relies wholly on the presumption of regularity and the inconsistent record to assume that Arenas must have re-entered. Resp'ts' Reply 21. The presumption applies "in the absence of clear evidence to the contrary" that public officers have "properly discharged their official duties." *Perez Cruz v. Bondi*, 146 F.4th 730, 739 (9th Cir. 2025). Here, there are two materially different Forms I-296 and two different certified administrative records in two different federal courts. These discrepancies are clear affirmative evidence of irregularity in the record.

Respondents also contend that the officer who issued the reinstatement decision relied upon DHS's electronic database, Resp'ts' Reply 13–14, but if the data in this electronic database is based upon upon the conflicting and incomplete record submitted in this case, that underscores Petitioner's claim that the reinstatement decision was unfounded. If the electronic database relies upon

human data entry (or AI data entry) from the other documents in the record, it does not serve as additional evidence that the removal was actually carried out.

*B. Respondents rely upon unknowns for the reinstatement and this case.*

Respondents admit the reentry date and place are “unknown”. The entire unlawful reentry portion of the reinstatement inquiry is speculative. Respondents cannot carry their burden on an affirmative factual finding of an unlawful reentry based on unknown information, particularly when the alleged departure is in question.

**IV. The Reinstatement inquiry and record do not support the requisite finding that Petitioner unlawfully re-entered.**

The record does not establish that Respondents followed the applicable regulations and internal operating procedures, as it must under the *Accardi* doctrine. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954)*; Church of Scientology of California v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990). As discussed *supra*, the record is incomplete. Further, Form I-871 shows that Petitioner indicated he wanted to make a statement. ROP-1. Nothing in the record indicates that there was a pause to document or solicit the statement as required by 8 C.F.R. § 241.8(b). Instead, there is only a “refused to sign” stamp over the form. ROP-1. The reinstatement decision seems to have been rushed

through shortly after the arrest, despite the competing Forms I-296, and Petitioner's indication he wanted to make a statement. The swift decision short-circuited the due process Petitioner is owed. There is no indication he was provided a meaningful opportunity to be heard at a time when it actually matters.[3]

Respondents' reliance on ROP-13 does not cure the § 241.8(b) violation. ROP-13 is a custodial-style sworn-statement form that advised Juan he had the right to remain silent, that anything he said could be used against him, and that he had the right to counsel before and during questioning. Refusing to answer after those warnings was not a waiver of the separate regulatory opportunity to make a written or oral statement contesting the I-871 reinstatement determination.

Respondents ask this Court to deny itself jurisdiction to review the execution of the few procedural safeguards that exist in reinstatement determinations. Respondents actions throughout do not indicate a concern for upholding procedural due process protections.

## IV. The litigative carelessness here highlights the necessity of judicial review and the potential for carelessness in the reinstatement process.

[3] A reasonable fear interview under 8 C.F.R. § 208.31 is a separate screening for a reasonable fear of persecution before an asylum officer with no authority over the reinstatement decision. *See* 8 C.F.R. § 208.31(c). The record shows Petitioner sought to contest the reinstatement under 8 C.F.R. § 241.8(b) at the time of the reinstatement, as required, as well as through this Petition for review.

Respondents have shown carelessness in Petitioner's case. Twenty years ago, Respondents either failed to carry out the removal, or created an incomplete record, obscuring the facts. If it was the former and the removal was never carried out, Respondents allowed Petitioner to remain in the U.S. and build a life here—which he has, with family, a business, a home, and community ties—only to have that life ripped from him without warning or due process. If it was the latter, Respondents' carelessness paved the way for the mishandling of the reinstatement process.

Twenty years later, the reinstatement decision seems to have been carried out in haste, without true grappling with the issues in the administrative record or Petitioner's response to the decision.

As Petitioner sought relief for various harms, Respondents then submitted a different administrative record in two different federal cases, failing to disclose in either case that there were two Departure Verifications (Form I-296) or that the agency left one out of each case. *See* Pet'r's Reply Supp. Mot. Strike 24. Respondents certified the record as complete in each case. When Petitioner alerted the Court to the issue, Respondents' response argued the two Departure Verification forms "are virtually identical but for the placement of Petitioner's signature". Resp'ts' Opp'n Pet'r's Mot. Strike 1. As can be seen in the exhibits accompanying Petitioner's reply, all of the signatures on the document are

different. Pet'r's Reply Supp. Mot. Strike 24. As discussed *supra*, signature issues matter to USCIS in issuing immigration benefits, *see* Signatures on Immigration Benefit Requests, 91 Fed. Reg. at 25,479, and have mattered to this Court when examination of the signature led to questions about the validity of a Form I-826, *see Lanuza*, 899 F.3d at 1022.

Respondents point to screenshots from the electronic database, ENFORCE Alien Removal Module (EARM) as evidence that he was removed. But there is no way to know if the data entry in the database occurred at the time of the 2005 encounter. Those same screenshots say that the information was updated by "EARM_MIG" on April 13, 2008, which was over two and a half years after the original removal order. ROP-2. The screenshots also lack information about who input the information into the EARM and whether that person had firsthand knowledge of the encounter. ROP-2.

The litigative carelessness here may have been inadvertent, but the stakes are high for Petitioner. Allowing the reinstatement order to stand and be carried out would mean Petitioner is barred from re-entering the U.S. for twenty years, even if he never actually left after the 2005 removal order.

## CONCLUSION AND RELIEF REQUESTED

The Court should vacate the reinstatement order issued December 7, 2025 and remand to Respondent with instructions to conduct reinstatement proceedings in compliance with 8 C.F.R. § 241.8, the agency's own guidance, and this Court's discussion of the agency's ability to exercise discretion when there are questions about whether the factual predicates have been met in *Villa-Anguiano v. Holder*, 727 F.3d 873, 878 (9th Cir. 2013). In the alternative, the Court should remand for the agency to supplement and correct the record of proceedings.

## CERTIFICATE OF COMPLIANCE

I, Sadie Wolff, am an attorney for Petitioner. I hereby certify that this brief contains 3,942 words according to the word count feature of Google Docs, excluding the items exempted by Federal Rule of Appellate Procedure 32(f), and thus complies with the word limit set forth by Ninth Circuit Rule 32-1. This brief's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6).

Dated: June 10, 2026

s/ *Sadie Wolff*
Portland Immigration Law LLC
520 SW 6th Ave
Suite 610
Portland, OR 97204

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2026, I caused the foregoing Petitioner's Reply Brief to be electronically filed with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit using the Court's appellate CM/ECF system.

In accordance with Federal Rule of Appellate Procedure 15(c) and 8 U.S.C. § 1252(b)(3)(A), I request that the Circuit Clerk serve a copy of the Reply Brief on the Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001, on the Director at the Office of Immigration Litigation U.S. Department of Justice, Civil Division 1331 Pennsylvania Avenue, N.W. Washington, D.C. 20004, and on the Director of the Seattle Field Office, Department of Homeland Security, U.S. Immigration and Customs Enforcement, 12500 Tukwila International Blvd, Seattle, WA 98168, respectively.

s/ *Sadie Wolff*
Portland Immigration Law LLC
520 SW 6th Ave
Suite 610
Portland, OR 97204